526 So.2d 334 (1988)
INAMCO, INC.
v.
CELSIUS SERVICES CORPORATION.
No. CA-7524.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
*335 Thomas A. Gennusa, II, Gennusa, Brandt & McDonald, Metairie, for plaintiff-appellee.
Emile J. Dreuil, Jr., New Orleans, for defendant-appellant.
Before SCHOTT, BYRNES and LOBRANO, JJ.
SCHOTT, Judge.
This is a claim by a refrigeration contractor, Inamco, Inc. against an insulation contractor, Celsius Services Corporation, for damages arising out of a breach of contract between the parties. Inamco had submitted a bid to a general contractor to perform the refrigeration work and in the preparation of its bid obtained a bid for the insulation from Celsius which was incorporated into Inamco's bid. Inamco was awarded the refrigeration contract and accepted Celsius' bid but Celsius refused to perform. Inamco had the insulation work done by another company and sued Celsius for the difference between its cost of the insulation work and Celsius' bid. From a judgment in Inamco's favor Celsius has appealed.
The evidence established that Inamco invited Celsius to make a proposal to perform the insulation work. Celsius' estimator went to Inamco's office where he extracted from the plans and specifications the quantity and type of materials to be included in the insulation bid. Celsius' contract manager, Dave Branton, priced the material, added labor, overhead and profit, and on March 29, 1984 made a proposal verbally and in writing to do the work for $58,614. Celsius' principals knew Inamco would use this figure in the formulation of its bid to the general contractor. On April 20 Inamco was awarded the bid and it immediately attempted to contact Branton to accept the Celsius bid. After repeatedly attempting to contact Branton, Inamco's principal on May 18 spoke to Dave Branton's father and Celsius' Board chairman, Tom Branton, who stated that Celsius would not do the job. On May 20 Inamco notified Tom Branton in writing that it would look for another insulation contractor and hold Celsius responsible for the difference.
After Inamco was awarded the contract and was attempting to contact Celsius, Tom Branton reached the conclusion that Inamco's credit history was poor and decided that Celsius would not do the work unless it received payment in advance or some form of security for the contract price.
In reasons for judgment the trial court found that Celsius' proposal of March 29 "was a binding offer which was accepted by Inamco within a reasonable time so as to constitute a binding contract." The court rejected Celsius' defense based upon Inamco's poor credit history because in its offer Celsius made no reference to terms and conditions or credit requirements as to Inamco. The trial court's reasoning is properly based upon the legal principles contained in LSA-C.C. arts. 1802, 1809 (prior to the revision of Titles III and IV of Book III of the Code by act 331 of the 1984 Regular Session effective January 1, 1985) to the effect that an offer like Celsius' is *336 irrevocable for a reasonable amount of time.
In its first argument on appeal Celsius contends that there was no binding contract between the parties because both sides contemplated the execution of a formal contract which was never completed. Celsius relies on Landura Corporation of Louisiana v. Lege, 418 So.2d 741 (La.App. 5th Cir.1982). This case is distinguishable for two reasons. First the trial court in Landura found from the testimony that both sides contemplated a formal contract and that no contract was ever entered into. The court of appeal considered this a credibility determination which should be left undisturbed on appeal. In the instant case the trial court made the finding that the parties had a binding contract when Inamco accepted Celsius' proposal. The record supports this conclusion. The second, and perhaps more significant, point of distinction in the Landura case is that at least five months elapsed between the date of Lege's proposal and Landura's acceptance. In the present case only three weeks elapsed between offer and acceptance.
The present case is fully supported by W.M. Heroman & Co. v. Saia Elec., Inc., 346 So.2d 827, (La.App. 1st Cir.1977) writ denied, 349 So.2d 1271, where the court applied C.C. Art. 1809 to an identical problem between a contractor and a subcontractor and found a binding contract even though the subcontractor's proposal was not accepted until three months after it was submitted.
In its second argument on appeal Celsius contends that it was justified in suspending its obligation until Inamco furnished security or paid in advance. Celsius relies on the Restatement of Contracts and some cases from other jurisdictions which provide for such a suspension in performance when the obligee has reasonable grounds to believe that the obligor is insolvent. The facts of the instant case show that Inamco was slow in payment of a previous bill due Celsius and had a poor credit rating by Dun & Bradstreet. However, it was also established that this information was readily available to the Brantons before they submitted their proposal and that they were perfectly capable of placing stipulations in their proposal to protect themselves. Instead they made an unconditional offer to Inamco which upon acceptance was binding without the late blooming security or cash in advance conditions. This argument lacks merit.
Finally, Celsius contends the trial court's award of $20,638.51 is manifestly erroneous. Inamco's engineer testified that when he lost the Celsius bid for $58,614 he secured bids from two other insulation contractors to do the same work. The one with the lower bid, Sunbelt Contractors, Inc., bid $68,171 but this did not include a power lift which was included in Celsius' bid. The additional cost of the lift would have been $10,000 so that Inamco could have gotten the work done by Sunbelt for $78,171. However, in an effort to minimize Celsius' damages and liability Inamco had the insulation of the pipes done at the factory of the Ravanco Company at a cost of $47,204 and employed the Miller Company to make the installation for a quoted price of $19,925. Again Inamco would provide the lift for $10,000. Thus, under this scheme Inamco's total cost to do the equivalent work Celsius bid on was $77,129, $1,042 less than the Sunbelt bid. Yet, when Miller did the work it billed Inamco $35,442 for the installation. Inamco argues in this court it was entitled to recover the difference between Celsius' bid and the total it paid Ravanco and Miller or some $24,000 and "incorrectly" sued for the $20,638 it was awarded.
We find that the trial judge committed manifest error in the amount of its award, but not to the extent claimed by Celsius. Inamco justified the new approach offered by Ravanco-Miller on the theory that this would save money over the Sunbelt bid to do the same work (plus the lift cost) as Celsius bid. The record shows that Miller ran into difficulties with the installation which are not fully explained in the record but which may have been caused by Inamco itself. In any event the record does not support Inamco's entitlement to a judgment in excess of $18,515, the difference *337 between $77,129 (the Ravanco-Miller proposal plus lift expense) and the $58,614 Celsius bid.
Accordingly, the judgment appealed from is affirmed but amended to reduce Inamco's recovery to $18,515.